UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
EASTERN DIVISION

| | | |
|---|---|---|
| DORMAN PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10-cv-12168 |
| | ) | |
| v. | ) | Hon. Stephen J. Murphy, III |
| | ) | |
| DAYCO PRODUCTS, LLC, | ) | Magistrate Judge R. Steven Whalen |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DAYCO PRODUCTS, LLC'S MOTION TO DISMISS
COUNTS I, III, AND IV OF DORMAN PRODUCTS, INC.'S COMPLAINT
<u>FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>**

Defendant, Dayco Products, LLC ("Dayco"), moves this Court, pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure, to dismiss Counts I, III, and IV of Plaintiff Dorman Products, Inc.'s Complaint for failure to state a claim upon which relief may be granted. A Memorandum in support of this motion is attached.

Respectfully Submitted,

<u>s/Kristen I. Spano</u>
Kristen I. Spano
Miller, Canfield, Paddock and Stone, PLC
150 W. Jefferson Avenue, Ste. 2500
Detroit , MI 48226-4415
313-963-6420
(P60370)
<u>spano@millercanfield.com</u>

Of Counsel:

Thomas F. Zych (#0019942)
    *Tom.Zych@ThompsonHine.com*
Matthew D. Ridings (#0079402)
    *Matt.Ridings@ThompsonHine.com*
THOMPSON HINE LLP
3900 Key Center, 127 Public Square
Cleveland, OH  44114-1291
Telephone:  (216) 566-5500
Fax:  (216) 566-5800

*Attorneys for Defendant Dayco Products, LLC*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
EASTERN DIVISION

| | | |
|---|---|---|
| DORMAN PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10-cv-12168 |
| | ) | |
| v. | ) | Hon. Stephen J. Murphy, III |
| | ) | |
| DAYCO PRODUCTS, LLC, | ) | Magistrate Judge R. Steven Whalen |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DAYCO PRODUCTS, LLC'S
MOTION TO DISMISS COUNTS I, III, AND IV OF
DORMAN PRODUCTS, INC.'S COMPLAINT FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................................................ ii

ISSUES PRESENTED ................................................................................................. iii

INTRODUCTION ........................................................................................................ 1

DORMAN'S ALLEGATIONS ...................................................................................... 1

LAW & ARGUMENT .................................................................................................. 3

    I.   The Standard for Dismissal ............................................................................. 3

    II.  Count I of the Complaint Fails to State a Claim for Defamation ...................... 3

    III. Dorman's Tortious Interference Claim is Speculative and Should be
          Dismissed ........................................................................................................ 6

    IV. Dorman Cannot State a Claim for Common Law Unfair Competition ............. 9

CONCLUSION ........................................................................................................... 11

# <u>INDEX OF AUTHORITIES</u>

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
   129 S.Ct. 1937 (2009)........................................................................................3, 7, 8

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)........................................................................................3, 7, 8, 9

*Glenn v. Point Park College,*
   272 A.2d 895 (Pa. 1971)........................................................................................8

*Scanvec Amiable Ltd. v. Chang,*
   80 Fed. Appx. 171 (3d Cir. 2003)........................................................................10

*Zeropol Corp. v. DMP Corp.,*
   561 F. Supp. 404 (E.D. Pa. 1983)........................................................................4

### STATUTES

Federal Rule of Civil Procedure Rule 12(b)(6)........................................................................3

## ISSUES PRESENTED

1.      Does Dorman adequately state a claim for defamation of character where the Complaint alleges that Defendant made false statements relating only to the quality of Plaintiff's products?

2.      Can a tortious interference claim survive a motion to dismiss where the Complaint does not allege non-conclusory facts sufficient to demonstrate that the defendant acted with the purpose to injure the plaintiff?

3.      Does Pennsylvania law allow a plaintiff to bring an unfair competition claim that is based on a theory other than passing off?

## INTRODUCTION

In response to Dayco Products, LLC's ("Dayco") Complaint demanding that Dorman Products, Inc. ("Dorman") cease its infringement of Dayco's intellectual property and its pattern of misleading and deceptive advertising, Dorman instead filed an action alleging numerous claims against Dayco.[1]   Each of Dorman's claims are without merit, and the Complaint is a calculated effort to deflect attention away from Dorman's own unlawful conduct in the marketplace.   Among the purported claims asserted by Dorman in the present Complaint are claims for defamation, tortious interference, and unfair competition.   While styled as claims under these theories of recovery, each Count subject to this motion is fatally defective because Dorman has failed to allege facts sufficient to plead claims for relief in a cognizable manner. Counts I, III, and IV of the Complaint therefore should be dismissed.

## DORMAN'S ALLEGATIONS

For the purposes of its motion to dismiss, and only for the purposes of its motion to dismiss, Dayco assumes the following allegations to be true:

Dorman is a supplier of automotive replacement parts, including automatic belt tensioners, which are used on vehicles to maintain tension on the serpentine belt.  (Complaint, ¶¶ 7, 15.)  In addition to Dorman, several other suppliers, including Dayco, compete for sales in the automatic belt tensioner aftermarket; however, Dorman sells its automatic belt tensioners, which meet the standards approved by the Society of Automotive Engineers, at a price significantly below that charged by other suppliers.  (Cmplt. ¶¶ 17, 19, 22.)

After Dorman's entry into the automatic belt tensioner aftermarket, Dayco conducted testing on Dorman's line of automatic belt tensioners.  (Cmplt. ¶ 26.)   After the testing was

---

[1]  Inexplicably, this claim was initially brought in Delaware, but it is now before this Court pursuant to Dayco's motion to transfer.

complete, Dayco prepared and distributed a presentation to potential customers that explained the testing results. In the presentation, Dayco stated that eight of the twenty Dorman aftermarket belt tensioners failed to meet the same performance standards as those met by Dayco's line of automatic belt tensioners. (Cmplt. ¶ 25.)

Thereafter, Dayco filed suit against Dorman in the United States District Court for the Eastern District of Michigan, alleging that Dorman infringed on Dayco's trade dress and falsely advertised its line of aftermarket belt tensioners. (Cmplt. ¶ 33.) Shortly after the litigation was filed, Dayco prepared and distributed a press release that described the nature of the suit. Among other things, the press release noted that Dorman falsely conveyed that Dayco did not manufacture belt tensioners when, in fact, Dayco manufactures most of its tensioners in Springdale, Arkansas. (Cmplt. ¶ 37.) The press release also stated that Dayco has requested a jury trial and certain remedies, including, *inter alia*, injunctive relief, damages, and fees. (*Id.*). The statements made in the press release are, of course, true on their face and there are no real factual allegations in the Complaint whatsoever that provide any basis for seeing them as anything other than true.

The Complaint also alleged that Dayco published to its website an interview with Dennis Welvaert, an Officer of Dayco. In the interview, Mr. Welvaert stated that one of the biggest issues facing the aftermarket is product quality, and that some private label parts may not be able to offer the same assurances of quality as are offered by a branded product. (Cmplt. ¶ 44.) Consumers perceive a quality difference between branded products and private label products. (Cmplt. 47.) Again, one could look through the Complaint in vain to find a specific factual allegation (as opposed to conclusory statements couched in terms more properly used to

2

denominate a type of claim as opposed to a case-specific one) that Mr. Walvaert spoke other than the truth.

## LAW & ARGUMENT

I.    **The Standard for Dismissal.**

A complaint should be dismissed for failure to state a claim upon which relief can be granted if the allegations in the complaint do not arise above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   Following the Supreme Court's decisions in *Twombly* and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), it is now clear that a "plausibility" standard must be used to judge a complaint challenged by a Rule 12(b)(6) motion.   If the allegations contained in the complaint are not "plausible on [their] face," these claims must be dismissed. *Twombly*, 550 U.S. at 570.   Put another way, a plaintiff's complaint, in order to properly state a claim for relief, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

Furthermore, although the facts alleged in the Complaint should be presumed as true, a complaint cannot rely on simple assertions of legal conclusions and except to survive a motion to dismiss.  *See Iqbal*, 129 S.Ct. at 1950 (holding that a court should discard allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth").  Accordingly, when a plaintiff has failed to satisfy the baseline requirements that its complaint is plausible, non-speculative, and based on factual allegations that, if proven, give rise to a claim for relief, a motion to dismiss must be granted. *Twombly*, 550 U.S. at 570.

II.    **Count I of the Complaint Fails to State a Claim for Defamation.**

Dorman attempts to bring separate actions for both defamation (Count I) and trade disparagement (Count II).   The Complaint, however, relies on nearly identical allegations to

3

support claims alleging these two distinct torts. *Compare* Complaint ¶ 49 ("Dayco has made false and defamatory statements in bad faith regarding the nature, characteristics and qualities of Dorman's automatic belt tensioners.") *with* Complaint ¶ 56 ("Dayco made disparaging, false, and incorrect statements of fact and opinion regarding the nature, characteristics and qualities of Dorman's automatic belt tensioners products."). Here, where both causes of action are based on Dayco's alleged statements regarding the "nature, characteristics and qualities of Dorman's automatic belt tensioners," the statements do not impugn Dorman's character and therefore should not be considered defamatory.

It has been long recognized that the torts of defamation and trade disparagement have distinct origins and are meant to protect different policies and interests. *Zeropol Corp. v. DMP Corp.*, 561 F. Supp. 404, 408 (E.D. Pa. 1983)[2] (noting that defamation protects a person's character, while a disparagement action protects economic interests); *see also Municipal Revenue Service, Inc. v. Xspand, Inc.*, --- F. Supp. 2d ----, No. 05-cv-671, 2010 WL 1233991, at * 8 (M.D. Pa. March 31, 2010) (discussing the distinct factual underpinnings of the two torts) (citing *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 923-24 (3d Cir. 1990)); RESTATEMENT (SECOND) OF TORTS § 623A, Comment g (1977) ("The two torts protect different interests and have entirely different origins in history.").

The distinction between the two torts is important because a claim for defamation, as Dorman has asserted here, requires pleading and proof that the publication charges the plaintiff with misconduct or reprehensible character. *See Tucker v. Phila. Daily News*, 848 A.2d 113, 125 (Pa. 2004) (reaffirming that a statement has defamatory meaning when it "unequivocally, maliciously and falsely imputes to an individual or corporation want of integrity in the conduct

---

[2] For the purposes of this motion only, Dayco assumes, but does not concede, that Pennsylvania law applies to the common law and statutory torts raised in the Complaint.

of his or its business"); PROSSER & KEETON, TORTS § 128, at 965 (5th ed. 1984) ("Personal defamation is found only where the imputation fairly implied is that the plaintiff is dishonest or lacking in integrity, or that he is deliberately perpetrating a fraud upon the public by selling a product which he knows to be defective."). As the Third Circuit explained, "[a]n action for commercial disparagement is meant to compensate a vendor for pecuniary loss suffered because statements attacking the quality of his goods have reduced their marketability, while defamation is meant protect an entity's interest in character and reputation." *U.S. Healthcare*, 898 F.2d at 924.

While courts have acknowledged that there could exist some situations in which "impugnation of product quality crosses the line from disparagement of products to defamation," this can only be so when the statement at issue "by fair construction and without the aid of extrinsic evidence . . . imputes to the corporation fraud, deceit, dishonesty, or reprehensible conduct in its business in relation to said goods or product." *Xspand*, --- F. Supp. 2d ----, 2010 WL 1233991, at * 8.

Here, there is nothing in the alleged statements made by Dayco that would impute fraud or dishonesty on Dorman. Rather, even accepting the allegations in the Complaint as correct, Dayco stated that Dorman's tensioners failed to meet performance specifications (Cmplt. ¶ 25), that the Dorman automatic belt tensioners are "inferior to Dayco," (Cmplt. ¶¶ 34, 39), and that private label parts were inferior to brand name parts (Cmplt. ¶¶ 45, 46.) By "fair construction and without the aid of extrinsic evidence," *Xspand, supra*, nothing in these statements impute fraud, deceit, or dishonesty. Because the statements alleged to have been made by Dayco do not impugn the character of Dorman, they are not defamatory as a matter of law and Count I of the Complaint should be dismissed. *See Xspand, supra* (dismissing a defamation claim where a

statement about the quality of a competitor's services could not be considered to call in the question the integrity of the plaintiff); *Polygram Records, Inc. v. Superior Court*, 170 Cal. App. 3d 543, 550 (1st Dist. 1985) ("[F]alse statements simply indicating that plaintiff's business goods 'were of inferior quality' . . . do not accuse plaintiff of dishonesty, lack of integrity or incompetence nor even imply any reprehensible personal characteristic, and are therefore not defamatory."); *Advanced Training Sys. v. Caswell Equip. Co.*, 352 N.W.2d 1, 8 (Minn. 1984) (holding that statements that the plaintiff produced unsound or shoddy goods merely disparage the product and do not constitute defamation); RESTATEMENT (SECOND) TORTS § 623A, Comment g ("Although it might be possible to imply some accusation of personal incompetence or inefficiency in nearly every imputation directed against a business or a product, the courts have insisted that something more direct than this is required for defamation."); *see also Auvil v. CBS "60 Minutes"*, 800 F. Supp. 928, 934 (E.D. Wash. 1992) ("This case is not about personal defamation. The [statement] did not suggest that [plaintiffs] were evil or irresponsible or even incompetent.").

**III.    Dorman's Tortious Interference Claim is Speculative and Should be Dismissed.**

In order to state a claim for tortious interference with contractual relations under Pennsylvania law, a plaintiff must plead and prove: (1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of any privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct. *Atlantic Paper Box Co. v. Whitman's Chocolates*, 844 F. Supp. 1038, 1047 (E.D. Pa. 1994). Dorman's allegations contained in Count III of the Complaint, particularly relating to allegations of harm, are nothing more than conclusory statements that parrot the elements of a claim for tortious interference. Under the

pleading standards articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), such allegations are insufficient to state a claim for relief and should be dismissed. *Twombly*, 550 U.S. at 555.

For example, in paragraph 63 of the Complaint, Dorman alleges that Dayco's "objectively baseless allegations of trade dress infringement . . . has[] tortiously interfered with Dorman's reasonable expectation of economic advantage." This allegation is nothing more than a naked conclusion and cannot survive a motion to dismiss. There is no factual allegation in the Complaint that, even if taken as true, would tend to show that the Dayco's trade dress infringement claims are "objectively baseless." In fact, paragraph 63 is the only substantive reference to Dayco's trade dress infringement claims in the entire Complaint. *Nowhere* does Dorman describe *any* factual predicate for its assertion that Dayco's trade dress infringement claim is baseless and, accordingly, Count III cannot be considered "plausible," allowing it to survive dismissal. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) ("A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (emphasis added). Dorman cannot state a claim merely by making pie-in-the-sky assertions: a bald conclusion such as that in paragraph 63 simply cannot maintain its tortious interference claim. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Bowman v. U.S.*, 304 Fed. Appx. 371, 374 (6th Cir. 2008); *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008); *Tahfs v. Proctor*, 316 F.3d 584, 593 (6th Cir. 2003).

Dorman's other bases for tortious interference claim do not fare any better. In considering a claim for tortious interference, "[i]t must be emphasized that the tort we are considering is an intentional one: the actor is acting as he does for the purpose of causing harm to

the plaintiff." *Glenn v. Point Park College*, 272 A.2d 895, 899 (Pa. 1971). Accordingly, the focus should be on whether a plaintiff has properly alleged whether the defendant interfered in the relationship with the deliberate purpose to harm the plaintiff. Arguably, allegations of intent to cause harm appear in paragraphs 66 and 67 of the Complaint, but neither paragraph raises Dorman's claim above a speculative level.

In paragraph 66 of the Complaint, Dorman alleges that "Dayco intended to harm Dorman by unfairly competing . . . and maliciously interfering with Dorman's prospective contractual relationships by intending to prevent these prospective relations from occurring." Again, even under the relaxed pleading standards that existed prior to *Twombly* and *Iqbal*, the Supreme Court of Pennsylvania held that similar allegations were insufficient to state a claim for relief. *Glenn*, 272 A.2d at 898 (holding that allegations of "intentional[], wrongful[], malicious[], fraudulent[ and] deceitful[]" conduct were insufficient to aver an intent to harm the plaintiff). Paragraph 66 of the Complaint cannot be considered sufficient to satisfy Dorman's obligation to plead that Dayco intended to cause harm to Dorman, particularly under *Iqbal*'s heightened pleading standard.

Likewise, paragraph 67 fails to sufficiently allege that Dayco intended to harm Dorman through its alleged conduct. It states that "Dayco . . . intended to harm Dorman[] because its defamatory statements about Dorman were directed toward potential users and purchasers of Dorman' [sic] products." The allegations in this paragraph are merely labels and conclusions that are prohibited under *Twombly* and *Iqbal*. Although Dorman concludes that Dayco intended to harm it, this conclusion based on nothing more than the allegation that Dayco made defamatory statements to potential users and purchasers of Dorman's products. Even assuming that this is true, this allegation nevertheless fails to offer any support for Dorman's claim Dayco acted with

the intention to deliberately harm Dorman. In fact, equally consistent with Dorman's allegation is the possibility that Dayco was simply trying to win more customers. As one court recently explained, defamatory statements made to obtain an economic advantage and not published solely out of malice do not give rise to a claim of tortious interference. *Pitcock v. Kasowitz, Benson, Torres & Friedman LLP*, --- N.Y.S.2d ----, 2010 WL 2400434, at * 1 (N.Y.A.D. 1 Dept. June 17, 2010).

Because the allegations in the Complaint are equally consistent with lawful conduct (or, stated otherwise, conduct that as a matter of law does not constitute tortious interference), there are no facts in the Complaint, even if true, that lead to the inevitable conclusion that Dayco tortiously interfered with Dorman's prospective contractual relations. Dorman asks this Court to assume, without the proper supporting allegations, that Dayco made its alleged statements "solely out of malice." Such an assumption cannot be properly made and Count III of the Complaint must accordingly be dismissed. *Assoc. Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume that the [plaintiff] can prove facts that it has not alleged); *see also Twombly*, 550 U.S. at 557 (holding that allegations consistent with lawful conduct are insufficient to state a claim for relief under Rule 8(a)(2)).

## IV. Dorman Cannot State a Claim for Common Law Unfair Competition.

Count IV of the Complaint attempts to state a claim for common law unfair competition, alleging that Dayco made false statements about Dorman's automatic belt tensioners, thereby unfairly competing with Dorman. (Cmplt. ¶ 72.) Dorman additionally alleges that tortious interference is "unfair competition," (Cmplt. ¶ 73), that trade libel is "unfair competition," (Cmplt. ¶ 74), and that Dayco intended to create an illegal restraint of competition, thus giving

rise to a common law unfair competition claim.  (Cmplt. 75.)  None of these allegations give rise to a common law claim of unfair competition under Pennsylvania law.

In Pennsylvania, the tort of unfair competition is typically limited to "passing off" or similar deceptive conduct that is designed mislead the consumer as to the source of goods. *Scanvec Amiable Ltd. v. Chang*, 80 Fed. Appx. 171, 180 (3d Cir. 2003) ("A claim of unfair competition under Pennsylvania law requires proof that the defendant has "passed off" the goods of one manufacturer or vendor as those of another, thus creating confusion between his own goods, and those of the rival."); *Prudential Ins. Co. of Am. v. Stella*, 994 F. Supp. 318, 322 (E.D. Pa. 1998) ("Unfair competition is . . . the passing off by a defendant of his goods or services as those of plaintiff by virtue of substantial similarity between the two leading to confusion on the part of potential customers."); *Sensenig v. Spring Glen Farm Kitchen, Inc.*, No. 2353, 1992 WL 540682, at * 2 (Pa. Com. Pl. Aug. 4, 1992) (dismissing unfair competition claim unrelated to "passing off" and noting that the tort of unfair competition is "almost universally recognized as a question of whether the defendant is passing off his goods . . . as those of the plaintiff"); *B.V.D. Co. v. Kaufman & Baer Co.*, 116 A. 508, 508 (Pa. 1922) (defining unfair competition as conduct designed or calculated to mislead consumers that they were buying the product of a rival company); *but cf. Carl A. Colteryahn Dairy, Inc. v. Schneider Dairy*, 203 A.2d 469, 473 (Pa.1964) (stating that to allow an employee to falsely state the reasons that he left his previous employer "is to countenance unfair competition").

Here, there is no allegation that Dayco attempted to pass off its own goods as those of Dorman, and there is likewise no allegation that Dayco improperly attempted to create confusion as to the source of its goods and those of Dorman.  Dorman has failed to state a claim for unfair competition and Count IV of the Complaint should be dismissed.

10

## CONCLUSION

For the foregoing reasons, Dayco respectfully requests that this Court enter an Order dismissing Counts I, III, and IV of the Complaint.

Respectfully Submitted,

s/Kristen I. Spano
Kristen I. Spano  (P60370)
Miller, Canfield, Paddock and Stone, PLC
150 W. Jefferson Avenue, Ste. 2500
Detroit , MI 48226-4415
313-963-6420
(P60370)
spano@millercanfield.com

Of Counsel:

Thomas F. Zych (#0019942)
    Tom.Zych@ThompsonHine.com
Matthew D. Ridings (#0079402)
    Matt.Ridings@ThompsonHine.com
THOMPSON HINE LLP
3900 Key Center, 127 Public Square
Cleveland, OH  44114-1291
Telephone:  (216) 566-5500
Fax:  (216) 566-5800
DATED:  July 12, 2010.            *Attorneys for Defendant Dayco Products, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2010, I electronically filed the foregoing document with the Clerk of the Court using the ECF system.

s/Kristen I. Spano
Kristen I. Spano
Miller, Canfield, Paddock and Stone, PLC
150 W. Jefferson Avenue, Ste. 2500
Detroit , MI 48226-4415
313-963-6420
(P60370)
spano@millercanfield.com

18,160,246 1\102323-00006

11